UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MELISSA A. MERRITT,

                              Plaintiff,              08-CV-0882T

                                                     **DECISION**
                    v.                               **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                              Defendant.

_____
_____

## INTRODUCTION

Plaintiff Melissa A. Merritt ("plaintiff") commenced this action on December 4, 2008, pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying plaintiff's claim for Social Security Disability Insurance ("SSDI") benefits under the Social Security Act. Both parties moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Court finds that plaintiff is not entitled to benefits because substantial evidence in the record demonstrates that she is not disabled within the meaning of the Social Security Act. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

Plaintiff alleges that she has been disabled since October 2003 because of an inability to use her non-dominant right due to tendinitis and carpal tunnel syndrome, as well as depression. (Tr. 59-61; 68-69; 84). Plaintiff was 29 years old at the time of her

amended onset date, had a high school education, one year of college, and is a certified pharmacy technician. (Tr. 59; 65; 73; 454). Her past work includes pharmacy technician, hand packager, deli clerk and stock clerk. (Tr. 69-70; 454-58). Her date last insured for SSDI purposes was December 31, 2007. (Tr. 41; 65).

Plaintiff writes with her left hand but performs a number of other functions with her right hand, such as using scissors, calculators, remote controls and eating. (Tr. 470; 474). Plaintiff's right hand problems began in 2001, and escalated to the point that she was advised to stop working in June 2002 by her treating physician Dr. Thomas Hansen, an orthopedic surgeon and hand specialist. (Tr. 459-60). In January 2004, plaintiff underwent two surgical procedures: carpal tunnel release and first extensor compartment release. (Tr. 290; 462). Plaintiff testified that her pain worsened after the procedures and that she has difficulty bathing herself and performing personal hygiene tasks. (Tr. 462-70). She also has difficulty preparing meals and doing dishes, although she does feed and bathe her daughter, gets her off to school, helps her with her homework, and feeds and bathes her pets. She testified that she cannot use her right hand to cut with scissors, type, or operate a computer mouse. (Tr. 486). She also testified that she cannot lift over five pounds with her right hand, but indicated no weight lifting limit for her left hand. (Tr. 486-87). Plaintiff states that her medications caused various side effects, including making her groggy and light-headed. (Tr. 489).

Administrative Law Judge Nancy Lee Gregg ("ALJ") found that the plaintiff has the residual functional capacity ("RFC") to lift, carry, pull and push up to ten pounds frequently with her left hand, using her right hand only to support or assist. She could not perform repetitive reaching or lifting with her right hand, or push/pull with her upper right arm, but could occasionally reach, handle and finger with her right hand. She had no

limitations in sitting, standing or walking in an eight-hour day, nor any limitations in climbing stairs, balancing, stooping, kneeling or crawling. The ALJ also found that plaintiff had the ability to understand, remember and follow simple directions and could perform simple tasks, maintain attention and concentration and learn new tasks. She had the ability to interact with the general public but had a moderate limitation in understanding detailed instructions.

The ALJ found that plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work reduced by the above-noted limitations. Although the ALJ determined that plaintiff could not perform any of her past work, the ALJ found that plaintiff is able to perform other work existing in significant numbers in the national economy such as a telemarketer, information clerk and telephone survey worker. Accordingly, the ALJ concluded that plaintiff was not disabled. (Tr. 37-40).

The Appeals Council denied plaintiff's request for review on October 1, 2008, and therefore, the ALJ's decision became the final decision of the Commissioner. (Tr. 7-9). Plaintiff then filed this action seeking review of the ALJ's determination.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980). Substantial evidence is "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

In order to qualify for SSDI benefits a claimant must not be able "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). Additionally, the claimant must meet the insured status requirements set forth in 42 U.S.C. § 423(c).

The following five-step sequential analysis is used to determine whether a claimant is disabled under the Social Security Act:

> 1.   The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2.  If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3.   If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4.   If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5.  If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears

the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater,* 221 F.3d at 132; *see also* 20 C.F.R. §§ 404.1520, 416.920.

## I.    **The Commissioner's Decision is Supported by Substantial Evidence**

The ALJ followed the five-step sequential analysis and found that plaintiff could not perform past work, but that there were other jobs that she could perform. The ALJ determined that plaintiff could lift, carry, pull and push up to ten pounds frequently with her dominant left hand, using her right hand only to support or assist. She could not perform repetitive reaching or lifting with her right hand, or push/pull with her upper right arm, but could occasionally reach, handle and finger with her right hand. She had no limitations in sitting, standing or walking in an eight-hour day, nor any limitations in climbing stairs, balancing, stooping, kneeling or crawling. With regard to plaintiff's mental RFC, the ALJ concluded that plaintiff could understand, remember, and follow simple directions, learn and perform simple tasks, concentrate sufficiently to complete simple tasks, and interact appropriately with the general public, supervisors, and co-workers. However, the ALJ concluded that plaintiff was moderately limited in her ability to understand and remember detailed instructions.

The ALJ's assessment of plaintiff's RFC is supported by substantial evidence in the record. Medical records support a finding that her right hand/arm could not be used for repetitive activities but could be used as a simple assist while performing activities with the her left hand/arm. In April 2003, Dr. Vinay R. Aggarwal, a general physician practicing family medicine and one of plaintiff's treating physicians, opined that plaintiff was "fairly limited in her activities with her right wrist" and that "repetitive actions" would make her condition worse. (Tr. 249). In April 2004, Dr. Paul Paterson, an orthopedic surgeon and

another treating physician, opined that plaintiff was unable to use her right hand "for any repetitive or heavy task." (Tr. 218). Dr. Hansen, also a treating physician, opined in August 2004 that plaintiff would be "unable to use that hand for repetitive activities indefinitely." (Tr. 283). Dr. Owen Moy, an Independent Medical Examiner for the Worker's Compensation Board, opined in that plaintiff could use her right hand as a simple assist. (Tr. 414-15). However, as plaintiff herself testified, there were no medical limits placed on her ability to use her dominant left hand. (Tr. 487).

Substantial evidence in the record also supports the ALJ's mental RFC assessment. Dr. Christine Ransom, Ph. D., psychologist, opined in November 2004 that plaintiff could follow and understand simple directions and could learn and perform simple tasks. (Tr. 216). Dr. Ransom opined that plaintiff would have mild to moderate difficulty performing complex tasks and coping with stress. Dr. Madan Mohan, Ph.D., opined in January 2005 that plaintiff could perform simple work-related mental activities, follow simple verbal directions, and maintain focus on simple tasks in a low demand and low contact work environment. (Tr. 301). Additionally, plaintiff's treating physician, Dr. Aggarwal, provided an assessment of plaintiff's mental capabilities in December 2006, and opined that plaintiff was only slightly limited in her ability to understand, remember, and carry out short, simple instructions and to make judgments on simple work-related decisions. (Tr. 364). He also stated that she was only slightly limited in her ability to carry out detailed instructions, but that she was slightly to moderately limited in her ability to understand and remember detailed instructions.

An impartial vocational expert, Jay Steinbrenner, testified that an individual of plaintiff's age, education, past relevant work, and RFC, could perform the following jobs: switchboard operator, with 968 jobs in the region and 213,400 jobs nationwide; telephone

survey worker, with 440 jobs in the region and 40,227 jobs nationwide; telemarketer, with 1,528 jobs in the region and 415,000 jobs nationwide; and information clerk, with 3,200 jobs in the region and 770,000 jobs nationwide. (Tr. 39; 491-93).

In light of the foregoing, the Court finds that substantial evidence supports the ALJ's conclusion that plaintiff is able to perform a significant number of jobs in the national economy and therefore is not disabled.

## II.    The ALJ Properly Considered Dr. Aggarwal's November 2007 Opinion

Plaintiff argues that the ALJ failed to properly consider a letter written by Dr. Aggarwal on November 21, 2007. In that letter, Dr. Aggarwal opined that plaintiff was "permanently disabled," that the potential effects of her medications "make it extremely difficult for her to maintain any form of gainful employment," and that he had "no expectation of her to return to the work force." (Tr. 441-43). Plaintiff argues that the letter represents Dr. Aggarwal's professional opinion that plaintiff cannot sustain gainful employment and that the ALJ erred by not giving Dr. Aggarwal's opinion controlling weight.

It is well settled that disability status determinations are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1),(3); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative."). Indeed, a physician's opinion regarding a claimant's disability status is not considered a "medical opinion" under the regulations. *See* 20 C.F.R. § 404.1527(e); *Adamski v. Barnhart*, 404 F. Supp. 2d 488, 492 (W.D.N.Y. 2005). Therefore, Dr. Aggarwal's conclusion that plaintiff was fully disabled was not entitled to controlling weight.

Nevertheless, a treating physician's opinion on matters reserved to the Commissioner may not be ignored. SSR 96-5p. Here, the ALJ did consider Dr. Aggarwal's conclusion that plaintiff was permanently disabled, but found that it was inconsistent with Dr. Aggarwal's treatment notes from October 26, 2007, wherein he stated that plaintiff did not have any new injuries, had not been using her TENS unit recently, and did not appear to be in pain. (Tr. 36, 443). Dr. Aggarwal's opinion that plaintiff was "fully disabled" and "permanently disabled" was also inconsistent with Dr. Singh's opinion that plaintiff had a "partial disability of a moderate to marked degree." (See Tr. 395-97). Moreover, the "permanently disabled" opinion was based upon the erroneous assumption that plaintiff was right-hand dominant. Thus, although the ALJ clearly considered Dr. Aggarwal's November 2007 letter, she did not err in failing to accord it any special significance, particularly in light of its inconsistency with other evidence in the record.

Contrary to plaintiff's contention, the ALJ was not required to recontact Dr. Aggarwal regarding the inconsistencies identified in his November 2007 opinion and his treatment notes. The ALJ has an affirmative duty to develop the administrative record, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), and is obligated to recontact medical sources when the evidence "is inadequate for [the ALJ] to determine whether [a claimant is] disabled." 20 C.F.R. § 404.1512(e). However, where the evidence in the record provides a sufficient basis for determining whether a claimant is disabled, the ALJ is not obligated to recontact a treating physician for additional information. *See Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.").

Here, there was sufficient evidence in the record for the ALJ to determine that the plaintiff was not disabled. Because the ALJ was able to reach a decision about plaintiff's disability based upon the existing medical evidence, there was no duty to recontact Dr. Aggarwal.

## **CONCLUSION**

For the reasons stated, the Court grants the Commissioner's motion for judgment on the pleadings and denies the plaintiff's motion for judgment on the pleadings.

IT IS SO ORDERED.

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

Dated: June 24, 2010
       Rochester, New York